IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**REX LEE RITCHIE**                                                          **PLAINTIFF**

v.                                             **Civil No. 09-2097**

**LT. CUPP** *et al.*                                                  **DEFENDANTS**

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Rex Ritchie, an inmate of the Arkansas Department of Correction in the Wrightsville Unit in Wrightsville, Arkansas, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation. Now before the Court is the Defendants' Motion for Summary Judgment. ECF No. 28.

**I. Background**

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court views the facts in a light most favorable to the Plaintiff. Upon inquiry from the Court as to whether Plaintiff would prefer the assistance of the Court in responding to the Motion for Summary Judgment, or if he would respond on his own, Plaintiff first chose to respond through a questionnaire propounded by the Court. ECF Nos. 31, 32. Plaintiff then chose to respond on his own. *See* ECF Nos. 33, 34, 40.

Plaintiff has brought this action against the Defendants, alleging Defendants denied him medical care, access to the mail, and held him under unconstitutional conditions of confinement while he was an inmate in the Crawford County Detention Center. ECF No. 1. Plaintiff also states he is making claims of lack of due process, denial of equal protection, and denial of access to the Courts. ECF No. 33.

Specifically, Plaintiff listed the following items in his Complaint, which the Court construes to be Plaintiff's allegations of unconstitutional actions by defendants:

- food not properly cooked;
- caffeine beverage substituted for "vitamin juice;"
- when clothes are washed, inmates must "go around naked;"
- denied religious materials;
- denied grievances or grievances not returned;
- grievances not given upon request;
- no written or oral explanation of rules for inmates in the facility;
- inmates must pay for hygiene items when deemed indigent;
- no proper or authorized personnel to dispense medication;
- no outside medical staff or nutritionist to address detainee's medical needs;
- denied indigent supplies such as paper, writing instruments, etc.;
- neglect of inmates;
- no panic buttons present to reach a guard in the front of the facility;
- no dietician, resulting in "unbalanced" food;
- neglect of inmates through no panic button or guard;
- cruel and unusual punishment;
- unsanitary living conditions, such as black mold in the shower;
- medical neglect as the nurse only comes to the facility once a week;
- drinking cups and trays have black mold;
- inadequate space in the recreation yard; and
- improper medical supplies for diabetic inmates.

ECF No. 1 at 5. Plaintiff further alleges that when he was booked into the facility on April 3, 2008, he had no medication, but had a back injury with a herniated or ruptured disc. ECF No. 33. Plaintiff characterizes this as a disability which the Defendants refused to accommodate.[1] *Id.* Specifically, Plaintiff alleges he should have been placed in a handicap-accessible cell, and be provided with non-skid floor mats, rails or benches. *Id.* Due to the lack of adjustments as noted above, water left on the floor outside the shower, and Plaintiff having to climb over other inmates, he suffered a fall and injury. *Id.*

On or about April 13, 2008, Plaintiff suffered a slip-and-fall type accident at the detention center and was taken to Summit Medical Center for treatment. *Id.* An x-ray was preformed, which Plaintiff

---

[1] Plaintiff states he his bringing a claim under Title II of the Americans with Disabilities Act ("ADA"), which applies to prisons and local correctional institutions. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998). However, Plaintiff did not state he was bringing an ADA claim until he filed his response to Defendants' summary judgment motion. Therefore, the undersigned does not consider this claim to be properly before the court and will not consider the claim at this time. Such a view shall in now way restrict Plaintiff's ability to bring such a claim by a separate action.

states shows a fracture that was not present before his incarceration and was unrelated to his previous back injury. ECF No. 33. Plaintiff asserts that after this injury defendants failed to help him schedule needed medical treatment. *Id.* Moreover, Defendants Cupp and Marvin explicitly refused him follow-up care. Plaintiff went for follow-up care on May 3, 2008, about three weeks after the injury occurred. *Id.* During the follow-up visit, the doctor recommended that Plaintiff have surgery and also prescribed medication. *Id.* Plaintiff states he was "paralyzed" at this time. *Id.* After this visit, Plaintiff states he received no further follow-up care. ECF No. 33.

Plaintiff further alleges that Defendants Waterdown and Langley would not bring him his medication, and that his medications were not refilled in a timely manner. *Id.* Plaintiff also developed a rash, which the nurse diagnosed as scabies and ordered lice shampoo for all inmates in the cellblock. *Id.* Plaintiff states the medication ordered by the nurse burned the rash and made the condition worse. *Id.* It is Plaintiff's assertion the nurse was not qualified to treat his condition and misdiagnosed him. *Id.*

Regarding his conditions of confinement claims, Plaintiff alleges he was subjected to a shower with flaking paint and black mold. *Id.* Additionally, the shower had stagnant water pooled outside of the shower most of the afternoon and night. ECF No. 33. Plaintiff also asserts he suffered "prolonged exposure to feces" in his locked cell because Defendant Waterdown would not clean up the cell or allow Plaintiff to clean up the cell. *Id.* As a result, Plaintiff was left in the unclean cell for ten to twelve hours. *Id.*

Plaintiff states he had to choose between sleeping in either a "locked cell" or on the floor. *Id.* Additionally, his meals lacked the proper nutrients because the detention center did not have a nutritionist. *Id.* The detention center also did not provide proper oversight of detainees, and often there was not a guard to ensure safety, which resulted in an assault on the Plaintiff. ECF No. 33.

Plaintiff states that Defendants Allen, Marvin and Cupp refused to provide him legal postage,

supplies, or an adequate law library. *Id.* Moreover, all defendants retaliated against him by withholding his medications on several occasions. *Id.*

Finally, Plaintiff alleges an inmate was "paid" by a non-party staff member to "beat him up" and cause him injuries. Plaintiff states he was not protected from this incident by Defendants.

**II.    Applicable Law**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.   Discussion**

    **A.     Official Capacity Claims**

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* at 24-27. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* at 25-27.

*Gorman*, 152 F.3d at 914.

A review of the complaint in this case shows that Plaintiff did not specify the capacity in which he was suing Defendants. ECF No. 1. Plaintiff did indicate in his response to summary judgment, ECF No. 33, that he was suing the Defendants in both their individual and official capacities. Moreover, the Defendants filed their motion for Summary Judgment both on individual and official capacity grounds. ECF No. 28. Therefore, the Court will construe Plaintiff's Complaint as stating both individual and official capacity claims.

Plaintiff's official capacity claims are tantamount to suing Crawford County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91.

Although Plaintiff does not divide out his claims into those which reflect an alleged policy and those which are individual capacity claims, it appears Plaintiff's Complaint presents the following claims regarding unconstitutional policies:

- improper nutrition;
- denial of religious materials;
- denial of grievance procedure;
- improper indigent supplies;
- employment of incompetent medical staff;
- improper medical supplies; and
- maintenance of an unsafe facility due to the lack of panic buttons.

Of these claims, save one, Plaintiff provides no evidence or allegation of the policy, custom, or procedure actually employed by Crawford County. Instead, Plaintiff merely makes the conclusory allegation that

some unidentified policy existed which led to the alleged claims.

For example, Plaintiff alleges he was denied religious materials, but makes no allegations of what religious materials were denied to him or the policy or procedure which led to the denial. The same is true for Plaintiff's allegations he was denied proper nutrition, because Plaintiff provides no allegations of the meals he was provided or how he was harmed. A plaintiff must show a direct causal link, indicating that the policy or custom is "the moving force [behind] the constitutional violation," *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999) (*citing Monell*, 436 U.S. at 694). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir.1992). Just as Plaintiff has failed to allege the actual policy or custom in action, he has also failed to allege any harm for his official capacity claims.

The only claim for which Plaintiff alleges a policy is regarding the provision of indigent supplies. Plaintiff alleges paper and stamps were not provided for indigent inmates. Plaintiff provides two grievances, one where he requests paper and stamps to write to the United States District Court, and the other where he requests to write his attorney, the public defender. In response to his first request regarding the United States District Court, Defendant Cupp responded that if Plaintiff needed to write his attorney to let her know, but that "we do not supply items." ECF No. 5 at 5. In response to the second request, Plaintiff is advised by Deputy Sexton, a non-party, that mail to Plaintiff's attorney is "in-house" mail and does not require a stamp.

Plaintiff's claim that he was denied access to the court by the policy of Crawford County not to provide him with stamps and paper fails in this instance. Plaintiff stated in his response to the Motion for Summary Judgment that he was still able to access the courts. Claims for denial of access to the court fail when the Plaintiff can not show actual injury or how the actions of Defendants impeded his access to the

Courts. *See, e.g., Etheridge v. Evers*, 326 F. Supp. 2d 818 (E.D. Mich. 2004) (postage stamps were confiscated but court held that plaintiff failed to show how this action impeded his access to the courts); *Atwell v. Lavan*, 557 F. Supp. 2d 532 (M.D. Pa. 2008), order aff'd, 366 Fed. Appx. 393 (3d Cir. 2010) (inmate's account for legal mail was incorrectly charged and he was denied postage for legal documents, but the court dismissed the claims in part because the plaintiff failed to allege any actual injuries that arose from the alleged violations). Plaintiff has made no such showing here.

However, the Court would caution that a policy which does not allow inmates to be provided with stamps and envelopes could easily run afoul of constitutional protections regarding access to the court, especially for an inmate proceeding *pro se*. Specifically troubling is Defendant Cupp's response that Plaintiff should let her know if he needs to write his attorney "about his case pending here." ECF No. 5 at 5. To the extent Defendant Cupp or the policy of the Crawford County Detention Center would restrict Plaintiff from filing in federal court, or in any court other than a Crawford County court, or in a case where he was representing himself, such a policy or restraint would certainly be constitutionally questionable. However, as Plaintiff has not alleged any harm in this case, the Court can make no ruling regarding any such policy at this time.

For the forgoing reasons, to the extent Plaintiff is alleging official-capacity claims, Defendants' Motion for Summary Judgment, ECF No. 28, should be **GRANTED** on those claims.

### B.    Individual Capacity Claims

Plaintiff has made individual capacity claims that he was housed under unconstitutional conditions of confinement, was denied medical care, and was retaliated against. The undersigned notes that Plaintiff has made many conclusory allegations in this case about his treatment and the conditions at the Crawford County Detention Center. For the most part, Plaintiff fails to connect the action or inaction of any named defendant to his alleged constitutional wrongs.

In order to state a claim against an individual official under 42 U.S.C. § 1983, Plaintiff must prove: (1) that the official's conduct subjected him to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States; and (2) that the official's actions were taken "under color of law." *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Jennings v. Davis*, 476 F.2d 1271, 1276 (8th Cir. 1973). Under section 1983, "[a] person 'subjects' another to the deprivation of a constitutional right . . . if he does an affirmative act, or omits to perform an act which he is legally required to do that caused the deprivation of which [the] complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). For a defendant to be held liable under § 1983, he or she must have personally participated in, or had some responsibility for, the particular act which deprived the plaintiff of a constitutionally protected right. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Accordingly, the Court will only specifically address below those claims for which Plaintiff has alleged a named defendant personally participated in or had some responsibility for, as summary judgment is due to be granted on all other claims.

### i. Denial of Medical Care

Plaintiff has made two denial of medical care claims. One, that Defendants Allen, Cupp and Marvin denied him a follow-up appointment after his emergency room visit on April 13, 2008. Two, that Defendants Waterdown, Allen, Huffmand, Marvin, Cupp, Irwin and Langley denied him medication.

In order to establish an inadequate medical care claim, a detainee must demonstrate that: (1) he had an objectively serious medical need; and (2) prison officials actually knew of and deliberately disregarded that serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). The Eighth Circuit has applied the same deliberate indifference standard to inadequate medical care claims based on either the Fourteenth or Eighth Amendment. *See Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

Regarding Plaintiff's claim that Defendants Allen, Cupp and Marvin denied him a follow-up appointment, the undersigned assumes, without deciding, that Plaintiff suffered an objectively serious medical need. However, Plaintiff has provided no evidence Allen, Cupp and Marvin knew of and disregarded his need for a follow-up appointment. The medical records provided from the emergency room at Summit Medical Center state that Plaintiff was referred to a physician, Steven Carney, to follow up "as needed." ECF No. 29-6. Further, Plaintiff was instructed to follow up if one of the following events occurred: pain was worse and not better, he had pain when moving his legs, he could not feel or move his legs, he had problems with passing urine or bowels, and if something really concerned or worried him about his back pain. *Id.* Plaintiff does not contend that one of these events occurred and that an appointment was not made. Rather, Plaintiff contends that there was a follow-up appointment made for him and he was prevented from attending that appointment. However, there is no evidence in the records provided to the Court that such an appointment existed or that Defendants Allen, Cupp and Marvin knew about the appointment. While Plaintiff did assert he had such an appointment in grievances, the response from Defendant Cupp was that there was no follow up appointment from the ER visit, and that Plaintiff was prescribed Naproxen and he could see the nurse as needed. ECF No. 29-4. The Court also notes there is nothing in the record to indicate Defendant Marvin or Allen knew about Plaintiff's belief he had a follow-up appointment.

Moreover, although he has been given the opportunity to do, Plaintiff has failed to come forward with any evidence demonstrating that he was harmed by not having a follow-up appointment. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (explaining that, to prevail on an inadequate medical care claim, an inmate must prove that the prison officials' "unconstitutional actions in fact caused his injuries"). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claim that he received inadequate medical care by being denied a follow-up appointment by Defendants Allen,

9

Marvin and Cupp.

Plaintiff also alleges that Allen, Marvin and Cupp, delayed him medical care because they "made Plaintiff wait almost two months before agreeing to attempt to schedule a specialist." ECF No. 34. When an inmate alleges that a delay in receiving medical care amounts to a constitutional violation, the inmate must allege and eventually place in the record, verifying medical evidence establishing the detrimental effect of the delay. *See Coleman v. Rhaja*, 114 F.3d 778, 784 (8th Cir.1997). Plaintiff has made no such allegation or placement of medical evidence into the record.

Plaintiff has also alleged that Defendants Waterdown, Allen, Huffmand, Marvin, Cupp, Irwin and Langley denied him medication, "at various times." ECF No. 3. Plaintiff offers no other explanation for this allegation other than to state it is "as documented in grievances." ECF No. 34. A review of the grievances on record in this case reflect that on May 21, 2008, Plaintiff complained that deputy Cole, a non-party to this case, did not provide him with enough cream, as prescribed by the nurse, to cover his rash, and once informed, Cole did not return with any additional cream. ECF No. 29-4. Plaintiff stated in the grievance that "Langley has done the same thing." *Id.* Other than this incident, there are no grievances on the record regarding any named Defendant failing to provide medication to Plaintiff.

Accordingly, at most, Plaintiff has alleged that Defendant Langley, on one occasion, was told by Plaintiff that Plaintiff required additional prescription cream beyond what had been dispensed, and failed to provide the cream. It has been held that the occasional missed dose of medicine, without more, does not violate the Eighth Amendment. *See e.g., Zentmeyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir. 2000); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987) (inmate with heart condition missed a morning dose of medication; no showing that this was an instance of callous disregard in the face of a pressing medical emergency); *Herndon v. Whitworth*, 924 F. Supp. 1171 (N.D. Ga.1995) (occasional missed doses of medication do not implicate the Constitution). In this case, Plaintiff missed no doses of medication, rather

one dose merely was not dispensed in a quantity he found to be sufficient. There is no indication Langley's actions in not returning with additional doses were taken in an effort to intentionally interfere with Plaintiff's medical treatment and nothing has been advanced establishing any adverse effect on Plaintiff's health. Moreover, nothing has been advanced to establish that Defendant Langley was in anyway responsible for the amount of the dosage provided to Plaintiff. Accordingly, the undersigned can find no genuine issues of material fact exist as to whether Langley, or any other defendant, exhibited deliberate indifference to Plaintiff's serious medical needs. Plaintiff was seen and evaluated by the jail nurse and prescribed medication to relieve his symptoms. Plaintiff received the medication as prescribed.

### ii. Unconstitutional Conditions of Confinement

Plaintiff has alleged that he was subjected to unconstitutional conditions of confinement because he was exposed to human waste for ten to twelve hours on one occasion because Defendant Waterdown refused to clean up such waste that was in Plaintiff's cell.

To state a viable conditions of confinement claim, an inmate must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). This standard applies whether the inmate is a pretrial detainee or a convicted prisoner. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006); *Smith v. Copeland*, 87 F.3d 265, 267–68 (8th Cir. 1996).

In evaluating whether an inmate's exposure to unsanitary conditions is unconstitutional, the Court is to focus on the length of the exposure to unsanitary conditions and how unsanitary the conditions were. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir.2003) (*citing Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)); *see also Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (length of

time required for conditions to be unconstitutional decreases as level of filthiness increases).

At most, Plaintiff has alleged he was subjected to an unclean area for twelve hours. *In Smith v. Copeland*, 87 F.3d 265 (8th Cir.1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation." *Id.* at 268. The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste. *Id.* at 269. It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years." *Id.* The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." *Id.* It further instructed that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.* In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." *Smith*, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. *Id.*

Plaintiff in the case at bar had a limited exposure to an unsanitary condition and does not allege any serious health consequences as a result. Under the totality of the circumstances, no genuine issue of material fact exists as to this claim and Summary Judgment is due to be granted.

### iii. Retaliation

Plaintiff has made two claims of retaliation, one that Defendant Waterdown "punished" him by spraying bleach in Plaintiff's cell and locking him in that cell. ECF No. 34. Second, Plaintiff alleges the staff hired another detainee, Mark Preston McDaniel, to assault him. ECF No. 34.

In general, conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason. *Cody v. Weber*,

256 F.3d 764, 771 (8th Cir. 2001); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id; see also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994) ("when retaliatory conduct is involved, there is no independent injury requirement").

Courts understand that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Graham*, 89 F.3d at 79. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (speculative and conclusory allegations cannot support a retaliation claim).

To prevail on his retaliation claims, Plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that the defendants took adverse action in response; and (3) that his protected activity was the cause of the retaliation. *See Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure). Regarding Plaintiff's claim that Defendant Waterdown retaliated against him, Plaintiff has failed to identify the protected activity he engaged in and how Waterdown's alleged act of placing Plaintiff in a cell with bleach was in reaction to any protected activity. Accordingly, the claim of retaliation against Defendant Waterdown must fail.

Regarding Plaintiff's claim he suffered retaliation because staff members requested another inmate assault Plaintiff for compensation, first, Plaintiff has not identified any named defendant who allegedly retaliated by requesting inmate McDaniel assault Plaintiff. Plaintiff has only identified a non-party, Hickey, who allegedly set up the assault. ECF No. 6. Plaintiff had the opportunity to identify Hickey for the

purpose of service, ECF No. 23, but he failed to do so. Plaintiff's retaliation claims regarding the alleged inmate assault also must be dismissed.

Finally, although Plaintiff alleges he was denied grievances, it is clear inmates do not have a constitutionaly protected right to a grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*citing Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993)). Therefore, a prison official's failure to respond to an inmate's grievances or to return copies of those grievances to that inmate, without more, is not actionable under § 1983. *Id.*

### IV. Conclusion

Construing Plaintiff's pleadings as broadly as possible, and drawing all inferences in favor of the Plaintiff, the Court finds, as a matter of law, that there is no genuine issue of material fact regarding Plaintiff's claims. Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No. 28, be **GRANTED** in its entirety.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **30th day of August 2011.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE